UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL LEAH ROSAS,

        No. 13-11453

       Plaintiff,

        District Judge Sean F. Cox

v.

        Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Rachel Leah Rosas ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on October 20, 2006, alleging disability as of October 15, 2005 (Tr. 181-185, 186-189).  On July 15, 2009, Administrative Law Judge

-1-

("ALJ")  John A. Ransom found that Plaintiff was not disabled (Tr. 101).  On May 19, 2011, the Appeals Council remanded the case to the administrative level on the basis that (1) Plaintiff was not advised of her right to representation, (2) the medical transcript before the Appeals Council did not contain evidence created later than 2006 although evidence created subsequent to 2006 was cited by the ALJ and, (3) the ALJ erroneously found that Plaintiff had worked in 2009 (Tr. 102-105).  The ALJ was directed to obtain additional evidence, if necessary, and provide a rationale for the Residual Functional Capacity ("RFC") found in the administrative opinion (Tr. 105).  On November 15, 2011, ALJ Craig Peterson conducted a second hearing, held in Mount Pleasant, Michigan (Tr. 37).  Plaintiff, represented by attorney Daniel Pollard, testified, (Tr. 44-65), as did vocational expert ("VE") Guy Hostetler (Tr. 65-71).  On January 4, 2012, ALJ Peterson found Plaintiff not disabled (Tr. 31).

On January 31, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-6).  Plaintiff filed suit in this Court on March 29, 2013.

## II.  BACKGROUND FACTS

Plaintiff, born July 10, 1968, was 43 at the time of the second administrative decision (Tr. 31, 181).  She completed four or more years of college (Tr. 224) and worked previously as a bookkeeper, food server, food server supervisor, and teacher's aide (Tr. 220).  She alleges disability due to cervical and thoracic spine conditions (Tr. 218).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

-2-

She currently lived in a one-family home with her 15-year-old daughter (Tr. 45). Since becoming disabled, her boyfriend and two of her other children had also lived with her (Tr. 45). Since 2005, Plaintiff had subsisted on a Workers' Compensation settlement, student loans, her daughter's disability payments, and government aid (Tr. 46). She drove herself to the hearing (Tr. 47). She had not been placed in special education classes during her formative years (Tr. 47). She attended college courses at Saginaw Valley State University from 1988 to 2002, and from approximately 2008 to 2011 (Tr. 48). She currently held a Bachelor's degree in social work and was scheduled to complete a Master's Degree in social work in May, 2012 (Tr. 48). She attended class for approximately 12 hours each week and spent up to 15 hours each week on class preparation (Tr. 48). She had a grade point average of 3.8 (Tr. 49). She did not experience problems reading or performing calculations (Tr. 49).

Plaintiff stopped working in September, 2006 due to neck pain (Tr. 50-51). Her job as server required her to lift up to 50 pounds (Tr. 53). As a result of the neck condition, she also experienced headaches and right upper extremity pain (Tr. 55). She experienced level "eight" pain on a scale of one to ten without narcotic pain medication and a "two or three" while medicated (Tr. 55-56). Hand problems obliged her to use her computer keyboard in "short increments" (Tr. 56). She had been diagnosed with Carpal Tunnel Syndrome ("CTS") in 2006 (Tr. 56). Back problems as a result of a workplace fall created back and shooting leg pains (Tr. 57). She took medication for both pain and muscle spasms (Tr. 58). She had

-3-

experienced "periods of depression" since becoming injured but did not currently take medication (Tr. 58). She attributed periodic wheezing to smoking (Tr. 59).

Plaintiff experienced the medication side effects of nausea, dizziness, sleepiness, memory problems, and constipation (Tr. 59). She performed physical therapy exercises 20 minutes a day three times a week to improve her physical condition (Tr. 59). She was unable to lift more than 15 pounds or stand or sit for more than 20 minutes (Tr. 60-61). Sitting longer than 40 minutes created foot numbness and leg pain (Tr. 61). She did not experience difficulty performing self care activities (Tr. 61). She spent a typical day taking her daughter to school, working at an internship (where she was allowed to change positions at will), cooking, household chores, and gardening (Tr. 62). She was able to perform laundry chores but was not able to lift laundry baskets (Tr. 62). She also took care of two dogs and a parrot (Tr. 63). She smoked approximately one pack of cigarettes a day (Tr. 63). She had looked for work (part time) since 2006 but had not "had much success" (Tr. 63).

**B. Medical Records**[1]

**1. Treating Records**

In December, 2005, John J. Kemerer, D.O. noted that a recent x-ray showed degenerative arthritis of the cervical spine (Tr. 357). The following month, Plaintiff reported an improved range of cervical motion (Tr. 358). A February, 2006 MRI of the cervical spine

---

[1]

Records predating the alleged onset of disability date and records unrelated to the benefits claim have been reviewed in full but are omitted from the current discussion.

showed "borderline stenosis" and mild degenerative changes but "no significant abnormality" (Tr. 317). March, 2006, physical therapy discharge notes state that Plaintiff terminated therapy after her Workers' Compensation benefits were discontinued (Tr. 307). The notes state that Plaintiff was "extremely cooperative" in attempting to meet rehabilitation goals (Tr. 307). The following month, neurologist Paul LaClair, M.D. performed an initial consultation, noting slightly decreased right cervical rotation, but a full range of lumbar spine motion (Tr. 325-326). He remarked that Plaintiff put forth "good effort" during the examination (Tr. 325-326). The same month, Plaintiff's pharmacist reported to the State of Michigan Department of Consumer & Industry Services that Plaintiff was "requesting too many narcotics too often" (Tr. 470).

In July, 2006, Plaintiff reported worsening back and neck pain after slipping on a wet floor (Tr. 424). September, 2006 treating records state that Plaintiff was using up to six Vicodin tablets each day for neck pain (Tr. 334). The same month, Dr. Kemerer opined that Plaintiff was unable to work as a waitress, but could perform work limited to 10 pounds lifting with a sit/stand option (Tr. 348). He stated that Plaintiff was capable of being "in a classroom setting" five days a week for eight hours (Tr. 348). A work release from the same month limited Plaintiff to working eight hours each day (Tr. 349). October, 2006 therapy intake records note Plaintiff's report of worsening neck pain (Tr. 329). Therapy notes from the following month state that she reported up to a 70 percent improvement in pain levels (Tr. 333, 388). The same month, Dr. LaClair noted "mild discomfort with palpitation" of the

-5-

thoracic spine (Tr. 381).   In February, 2007, Plaintiff reported right hand numbness (Tr. 380).  Clinical testing was negative for abnormalities (Tr. 380).  Nerve conduction studies showed mild Carpal Tunnel Syndrome ("CTS") on the right (Tr. 379).   Dr. LaClair recommended the use of a wrist splint (Tr. 377).   In March, 2007, an MRI of the lumbar spine showed a disc herniation at L5-S1 without nerve root effacement (Tr. 408).   Dr. LaClair noted in May, 2007 that symptoms of CTS had improved with the splint use (Tr. 376).  In September, 2007, Dr. LaClair noted that Plaintiff denied side effects from recently prescribed pain medication (Tr. 374).  He also prescribed Vicodin for "breakthrough pain" (Tr. 374).  In November, 2007, Plaintiff denied medication side effects (Tr. 373).

In February, 2008, Dr. LaClair noted that Plaintiff was able to perform daily activities and take care of her children (Tr. 372).  She denied medication side effects (Tr. 372).  Dr. LaClair encouraged Plaintiff to continue with a home exercise program (Tr. 372).  An August, 2008 MRI of the cervical spine showed minimal spondylotic changes at C6-C7 but no herniation or other abnormality (Tr. 572).  An MRI of the lumbar spine was negative for significant abnormalities (Tr. 573).

May, 2009 treating notes indicate that Plaintiff was sitting 30 hours each week in a class and was also spending 18 hours each week as a volunteer (Tr. 538).  In October, 2009, Christine Elsholz, M.D. opined that Plaintiff required a sit/stand option allowing her to change positions as often as every 20 minutes (Tr. 371).  She stated that "on occasion," Plaintiff needed to recline (Tr. 371).  She noted that Plaintiff's use of Morphine and Flexeril

"can be sedating" (Tr. 371).   July, 2010 treating notes state that Plaintiff sought emergency treatment for symptoms of opiate withdrawal (Tr. 600).   In November, 2010, Dr. Elsholz again opined that Plaintiff required a sit/stand option (Tr. 695).

In June, 2011, Dr. Elsholz once again restated her October, 2009 opinion (Tr. 627 *see* 371).   A medical source statement created the following month found that Plaintiff was limited to lifting 10 pounds frequently and 20 pounds occasionally; sitting for a total of three hours each day and standing or walking for one; and occasional manipulative activity (Tr. 650).   Plaintiff was precluded from all postural activities except for climbing stairs or ramps (Tr. 651).   The assessment found that Plaintiff should avoid unprotected heights, moving machinery, humidity, temperature extremes, and vibrations (Tr. 652).   The assessment limited her to the occasional operation of a motor vehicle and airborne pollutants (Tr. 652).   Also in July, 2011, Dr. Elsholz noted that Plaintiff was in her last semester of school before obtaining a four-year degree and intended to pursue a Masters degree (Tr. 684).   Dr. Elsholz remarked that Plaintiff had "normal" mobility and "no palpable hip pain" (Tr. 685).   In September, 2011, Dr. Elsholz composed a letter, stating that Plaintiff should be allowed to rest for 150 minutes after working for three hours (Tr. 676).   The following month, Dr. Elsholz, noting a normal gait and station, indicated that Plaintiff was capable of participating in an exercise program (Tr. 782).

## 2. Non-Treating Records

In December, 2006, Michael O'Connor performed a non-examining Residual

Functional Capacity Assessment of the treating records on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 363).   As to postural limitations, he found that Plaintiff could balance, stoop, kneel, crouch, and climb stairs and ramps frequently and perform occasional crawling but was precluded from all climbing of ropes, ladders, or scaffolds (Tr. 364).   He found that Plaintiff was limited to occasional overhead reaching and precluded from concentrated exposure to extreme cold, vibrations, and "hazards" (Tr. 365-366).   O'Connor found Plaintiff's allegations of limitations "partially credible" (Tr. 367).

In July, 2011, Siva Sankaran, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's complaints of neck pain and right hand and foot numbness (Tr. 641).   Dr. Sankaran observed a normal gait and range of motion, and good bilateral grip strength despite a positive Tinel's sign on the right (Tr. 643).

### 3.  Material Submitted After the January 12, 2012 Administrative Opinion[2]

In September, 2007, Plaintiff sought emergency treatment for headaches resulting from pain medication withdrawal (Tr. 798).   April, 2009 emergency room records state that Plaintiff sought treatment for an accidental overdose of morphine (Tr. 788).   In September, 2010, Plaintiff sought pain medication from emergency room personnel during a period in

---

[2]Evidence duplicating the information considered by the ALJ has been omitted from the present discussion (Tr. 369-379, 415-416).

which her physician was unavailable (Tr. 790). She received a short-term prescription for

Norco (Tr. 791). She exhibited 5/5 muscle strength (Tr. 795).

### C. Vocational Testimony

VE Hostetler classified Plaintiff's former work as a waitress as unskilled and

exertionally light as generally performed, but "heavy" as described by Plaintiff[3] (Tr. 68). The

ALJ then posed the following question to the VE, taking into account Plaintiff's age,

education, and work experience:

> [A]ssume an individual . . . who can lift and carry up to 20 pounds
> occasionally, 10 pounds frequently; and push and pull up to 10 pounds
> occasionally; can stand or walk up to six hours out of an eight-hour work day;
> sit up to six hours out of an eight-hour work day with normal breaks; can
> occasionally stoop, kneel, crouch, and crawl; there would be no overhead
> work; no forceful pushing, pulling, ripping, or grasping; no vibration with the
> use of the upper extremities; no unprotected heights or dangerous machinery;
> no exposure to heat or cold; there are no visual or communication limitations;
> there are no limitations regarding concentration, persistence, and pace; and
> there are no social deficits; now based on that hypothetical could this person
> perform the past relevant work? (Tr. 68-69).

The VE responded that given the hypothetical limitations, the above-limited individual

would be unable to perform any of Plaintiff's past relevant work but could perform the light,

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires
"lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of
objects weighing 50 pounds or more. § 404.1567(e).

unskilled work of a garment sorter (33,780 positions in the state economy) and vacuum cap

tester (25,200) (Tr. 70). He stated that if the individual were limited to sedentary rather than

light work with an "at will" sit/stand option, she could perform the work of a surveillance

system monitor (Tr. 70). He testified that if the same individual were off task for more

than 10 percent of the workday, all work would be precluded (Tr. 70). He concluded by

stating that his testimony was not inconsistent with the information found in the Dictionary

of Occupational Titles ("DOT") (Tr. 71).

### D.  The ALJ's Decision

Citing the medical and therapy records, ALJ found that Plaintiff experienced the

severe impairments of "cervical spine degenerative disc disease, lumbar spine degenerative

disc disease, and mild carpal tunnel syndrome" but that none of the conditions met or

equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24).

The ALJ determined that Plaintiff had the  Residual Functional Capacity ("RFC") for

sedentary work with the following additional restrictions:

> [She] can lift and/or carry 10 pounds occasionally and push or pull up to 10
> pounds occasionally.  She can stand and/or walk for up to six hours in an
> eight-hour workday, with normal breaks.  She requires a sit/stand option at
> will.  She can occasionally stoop, kneel, crouch, and crawl.  She can perform
> no overhead work, and can do no forceful pushing, pulling, gripping, or
> grasping.  There can be no vibration with the use of the upper extremites.
> The claimant must avoid all exposure to unprotected heights, dangerous
> machinery, heat, and cold.  She has no visual or communication limitations.
> There are no limitations regarding concentration, persistence, or pace.  There
> are no social deficits (Tr. 25).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform her

-10-

past relevant work, she could perform the work of surveillance monitor (Tr.  29-30).

The ALJ discounted Plaintiff's allegations that she was unable to perform sedentary work 25-28).  He cited treating records showing a normal gait, a full range of motion, and full muscle strength (Tr. 26).  The ALJ observed that symptoms of CTS were relieved by the use of a wrist splint (Tr. 27).  He found that Plaintiff's allegations of limitation stood at odds with her ability to drive, hold an internship, care for two dogs, and perform household and yard chores (Tr. 27-28).

## III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the

-11-

administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff's counsel, relying on the same argument he has used in almost every one of his motions for summary judgment for various clients, argues that the hypothetical question

to the VE did not account for Plaintiff's full degree of impairment. *Plaintiff's Brief* at 7-12, *Docket #9* (citing Tr. 69-70).   Plaintiff's counsel argues that the omission of key physical limitations  (as alleged by his client) from the hypothetical question invalidates the Step Five finding that she was capable of a significant range of  work.  *Id.* at 6 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

        In effect, Plaintiff's counsel is alleging that critical omissions in the hypothetical question stems from the ALJ's erroneous rejection of Plaintiff's claims.  As such, before deciding whether the hypothetical question accurately reflected her limitations, the Court must determine whether substantial evidence supports the ALJ's credibility determination. The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2.  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [4]

---

        [4]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

  (i) Your daily activities; (ii) The location, duration, frequency, and intensity
  of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv)

-13-

Plaintiff's argument that the credibility determination is not supported is without merit. With nothing more, her own testimony defeats her claim that she is unable to perform unskilled, sedentary work with a sit/stand option. She admitted that since the alleged onset of disability, she had cared for up to three of her children at a time, gardened, performed housework, completed a four-year degree and significant graduate work, and held an internship (Tr. 48, 62-63). Plaintiff's admission that she had been looking for work without success since 2006 stands at odds with her contention that she would be unable to perform even the low impact work of a surveillance monitor (Tr. 63).

The treating records likewise undermine the disability claim. Dr. Kemerer's September, 2006 statement that Plaintiff could perform sedentary work with a sit/stand option is consistent with the ALJ's findings (Tr. 348). Plaintiff responded well to physical therapy in the year following her injury (Tr. 333, 388). The condition of CTS was diagnosed as "mild" and responded well to the use of a splint (Tr. 377, 379). Despite claims of significant neck pain, an August, 2008 MRI of the cervical spine was unremarkable (Tr. 573). The treating records show that Plaintiff denied medication side effects on multiple

_____

The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

-14-

occasions (Tr. 372-374).   Substantial evidence amply supports both the credibility determination and by extension, the ALJ's choice of hypothetical limitations.   See *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in  hypothetical to VE). Because the ALJ's credibility determination was well supported and explained, he did not err in excluding Plaintiff's unsupported claims from the hypothetical limitations (Tr. 25-29).

Plaintiff's brief also contains a recitation of the "treating source rule," but is unaccompanied by any citation to a treating source opinion, much less how the ALJ erred in the analysis of the treating records.[5]   Further, while Dr. Elsholz opined on numerous occasions that Plaintiff needed to recline periodically during the workday and possibly experienced medication side effects, (Tr. 371, 627, 676) the ALJ permissibly rejected these opinions because they were "not consistent with the objective medical evidence or the doctor's own fairly benign physical examination findings" (Tr. 28).  I agree.  Dr. Elsholz's records include the observations that Plaintiff was fully mobile, did not experience hip pain, and was able to attend classes toward an advanced degree (Tr. 684-685).  Her statement that pain medication "can be sedating" (Tr. 371) stands at odds with Plaintiff's denial of medication side effects (Tr. 372-374).

Finally, although Plaintiff has not cited the material she submitted after the ALJ's

---

[5]In fact, Plaintiff's brief does not contain even one citation to the medical transcript.

-15-

decision, I have considered this evidence in making my recommendation (Tr. 784-789).   To establish grounds for remand based on such material, Plaintiff would be required to show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see also *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993).   First, Plaintiff has not provided "good cause" for the tardy submission of the newer material.   Second, a large portion of the records simply duplicate earlier submitted documents.   Further, the records that do not duplicate the earlier evidence do not shed new light on the disability claim or contradict the ALJ's findings. Because Plaintiff has not shown that the newer records would be likely to alter the ALJ's decision, a remand on this basis is not warranted.

In closing, I note that the transcript does not strongly support Plaintiff's current claim for benefits. Plaintiff's counsel has not articulated a cogent claim of error at the administrative level and  it does not appear that he spent much, if any time reviewing the transcript before filing suit or even considering whether filing a claim in this Court was warranted.[6]   Still, this Court expended its already strained resources in reviewing the 799-page transcript, preparing a report, and making its recommendation.   After a thorough review of the administrative record, I conclude that the ALJ did not err in finding that Plaintiff was not disabled.   As such, I recommend that the Commissioner's decision remain

---

[6]

See *Fielder v. Commissioner of Social Sec.,* 2014 WL 1207865, *1, fn 1 (E.D.Mich. 2014)(Rosen, J.)( "nearly every Magistrate Judge in this District has expressed . . . concern with the work product of Plaintiff's counsel").

undisturbed. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

 I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.


                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated:  May 19, 2014